UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In re:

Adam John Renz aka Adam J. Renz　　　　　　　　Case No.: 11-73471-ast
aka Adam Renz, and Claudia Marie Renz　　　　　　Chapter 13
aka Claudia M. Renz aka Claudia Renz,

　　　　　　　　　　　Debtors.
---------------------------------------------------------X

### DECISION AND ORDER DENYING CONFIRMATION
### OF DEBTORS' CHAPTER 13 PLAN

*Issue Pending and Summary of Ruling*

　　　　This case tests the outer limits of how debtors may seek to utilize the Bankruptcy Code and Rules to obtain the maximum advantages of the process known as "Chapter 20"[1]; that is, whether debtors can obtain a Chapter 7 discharge and thus be absolved of personal liability on their home mortgage debts, then file a Chapter 13 case before they are eligible for another discharge and strip off[2] an underwater junior mortgage[3] on their home, and do all of this without paying any consideration to the holder of the underwater mortgage. The specific issue now pending is whether this Court should confirm Debtors' Chapter 13 plan and permit these Debtors, who previously received a Chapter 7 discharge and are ineligible for a Chapter 13 discharge, to file a proof of claim on behalf of the underwater junior mortgage holder, file and prevail in an adversary proceeding against the mortgage holder to strip off the lien, then

---

[1] "In a 'chapter 20' case, a debtor who previously received a chapter 7 discharge later files a chapter 13 case; such a debtor is ineligible to receive a chapter 13 discharge if he or she received a chapter 7 discharge 'in a case filed under chapter 7 . . . during the 4-year period preceding' the filing of the chapter 13 case, pursuant to 11 U.S.C. § 1328(f)(1)." *In re Miller*, 462 B.R. 421, 425 n.2 (Bankr. E.D.N.Y. 2011), citing *In re Orkwis*, 457 B.R. 243, 249 (Bankr. E.D.N.Y. 2011); 8 COLLIER ON BANKRUPTCY ¶ 1328.06 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

[2] A "strip off" refers to the avoidance of a wholly unsecured mortgage lien, when the value of the collateral securing the junior lien is less than the amount owed to senior lienholders. *See id.* at 425.

[3] A mortgage lien is "underwater" when there is no value or equity in the property to secure the lien. *See In re Frazer*, 466 B.R. 107, 117 (Bankr. S.D.Tex. 2012).

1

withdraw the claim and pay nothing to the holder of the stripped off underwater mortgage. Here, where Debtors enjoy sufficient disposable income to pay the value of the junior mortgagee's *in rem* claim in full, this Court concludes that not only may Debtors not withdraw the proof of claim they filed on behalf of the junior mortgage holder, but their plan should not be confirmed as it was not proposed in good faith.

*Jurisdiction*

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(A), (K) and (L), and the Standing Order of Reference in effect in the Eastern District of New York dated August 28, 1986.

*Background*

Adam John Renz and Claudia Marie Renz (the "Debtors") filed for Chapter 7 bankruptcy relief in 2009 and received a Chapter 7 discharge on December 15, 2009. Case No. 09-76999-ast. Debtors filed this Chapter 13 case less than two years later on May 16, 2011 (the "Petition Date") and, as such, are ineligible to receive a Chapter 13 discharge. *See* 11 U.S.C. § 1328(f)(1).[4]

The Schedules in this case reveal that Debtors own real property located at 69 Talfor Road, East Rockaway, New York 11518 as their primary residence (the "Property"). Debtors have estimated the value of the Property in their Schedule A to be approximately $500,000.00. The Schedules further disclose that the Property serves as collateral for two different mortgage debts: Wells Fargo Bank, N.A. ("Wells Fargo") holds the first mortgage on the Property in the amount of $599,216.00, and JPMorgan Chase Bank, N.A. ("Chase") holds the second mortgage on the Property in the amount of $100,516.80 (the "Chase Mortgage"). Before the deadline for creditors to file proofs of claim had expired, Debtors, through their counsel, filed a proof of

---

[4] All references to the "Bankruptcy Code" are to 11 U.S.C. § 101, *et seq*. All references to the "Rules" or "Bankruptcy Rules" are to the Federal Rules of Bankruptcy Procedure. FED R. BANKR. P. 1001, *et seq.*

claim on behalf of Chase on June 21, 2011, asserting a mortgage debt of $100,516.80, the same amount as was stated in Debtors Schedules (the "Chase Claim").  As is further discussed *infra*, Bankruptcy Rule 3004 allows a debtor to file a claim on behalf of a creditor under certain circumstances.  *See* FED. R. BANKR. P. 3004.

On that very same day, June 21, 2011, Debtors commenced an adversary proceeding against Chase (the "Adversary"),[5] seeking, *inter alia*, a judgment declaring the Chase Mortgage wholly unsecured.  Chase failed to answer or otherwise appear in the Adversary.  Consequently, Debtors filed a motion for default judgment, which was also unopposed by Chase.  On November 3, 2011, the Court granted the default judgment (the "Judgment").  The Judgment specifically provides, *inter alia*, that "the claim held by Chase, secured by a mortgage lien on the Debtors' real property . . . [shall] be deemed a wholly unsecured claim, and that the entire subordinate mortgage lien be declared null and void upon the filing by the Chapter 13 Trustee of a Certification of Completed Chapter 13 Plan."[6] [adv. pro. dkt item 8]

Shortly thereafter, on November 15, 2011, Debtors' counsel filed a letter in the main case purporting to withdraw the Chase Claim.  [dkt item 19]  Less than an hour later, Debtors filed a Third Amended Chapter 13 Plan (the "Plan"), which declared the Chase Mortgage avoided, called for all post-petition payments on the Wells Fargo first mortgage to be made outside the Plan, and provided for a one hundred percent (100%) distribution[7] to all unsecured creditors who had filed timely proofs of claim.  [dkt item 20]  As such, the Plan, if confirmed by this Court, would result in no distribution of any kind to Chase.

---

[5] The Adversary was assigned adversary proceeding number 11-09169-ast.

[6] This is the protocol used by this Court in a Chapter 20 case, for the reasons discussed in *In re Miller*, 462 B.R. 421.

[7] Schedules I and J to the Petition reveal Debtors' monthly net income to be $3,767.37, and Official Form B22C reveals Debtors' monthly disposable income under 11 U.S.C. § 1325(b)(2) to be $4,992.67.

On March 7, 2012, the Chapter 13 Trustee (the "Trustee") filed an objection to confirmation of the Plan, on the following grounds: that the Plan had not been proposed in good faith; that the Bankruptcy Rules do not permit Debtors to withdraw the Chase Claim; and that Debtors' Schedules indicate that Debtors have sufficient income to pay the Chase Claim in full. [dkt item 26]

Debtors filed an Affirmation in Response to Trustee's Objection alleging that the Bankruptcy Code does not explicitly prohibit Debtors from withdrawing the Chase Claim and, in fact, implicitly permits such withdrawal; that Chase's failure to participate in both the main case and the Adversary suggests Chase's tacit acceptance of Debtors' withdrawal of the Chase Claim; that the totality of the circumstances demonstrates that the Plan was proposed in good faith; and that if withdrawal of the Chase Claim is not permitted, the Chase Claim should be disallowed due to Debtors' prior Chapter 7 discharge of their *in personam* liability to Chase. [dkt item 27] Debtors did not dispute their ability to pay the Chase Claim in full.

On March 22, 2012, this Court held a confirmation hearing, and at the conclusion of the hearing decided to take this matter under submission. The Court allowed Debtors three weeks to file supplemental briefing, and two weeks for the Trustee to file any supplemental reply briefing. On April 3, 2012, Debtors filed a memorandum of law in support of their plan, and on April 23, 2012, the Trustee filed a brief in opposition. [dkt items 28, 29]

## DISCUSSION

This Court will first address whether Debtors may withdraw the Chase Claim they filed and then address whether the Plan should be confirmed.

*Withdrawal of the Chase Claim*

There are two considerations in deciding whether Debtors may withdraw the Chase Claim; the first is a rules-based approach, that is, whether the Bankruptcy Rules that allow debtors to file a claim on behalf of a creditor allow debtors to unilaterally withdraw that claim; the second is an adjudicative approach, that is, whether allowing withdrawal of the Chase Claim here would be inconsistent with the Judgment stripping the Chase lien.

*Filing of Claims under Rule 3004 and Withdrawal of the Claims under Rule 3006*

The Trustee alleges that even though the Bankruptcy Rules provide express authority for Debtors to have filed the Chase Claim under Rule 3004, there is no provision authorizing Debtors to withdraw that very claim. The Trustee is mostly correct.

Rule 3004 sets forth a procedure for a debtor or a trustee to file a proof of claim on behalf of a creditor who does not file a claim, as follows:

> If a creditor does not timely file a proof of claim under Rule 3002(c) or 3003(c), the debtor or trustee may file a proof of claim within 30 days after the expiration of the time for filing claims prescribed by Rule 3002(c) or 3003(c) . . . .

FED. R. BANKR. P. 3004. In a Chapter 13 case, a non-governmental proof of claim is timely filed if it is filed not later than 90 days after the first date set for the meeting of creditors called under § 341(a). FED. R. BANKR. P. 3002(c). Here, Debtors' § 341 meeting was first set for July 6, 2011, thus creating a deadline for filing non-governmental proofs of claim of October 4, 2011 (the "Bar Date"). Yet, Debtors filed the Chase Claim on June 21, 2011, well before the Bar Date had run. Chase never filed a claim on its own behalf; however, Rule 3004 does not expressly

state that a debtor may or may not file a claim on behalf of a creditor in anticipation of the creditor failing to file a claim. Consequently, Debtors' filing of the Chase claim prior to the Bar Date may have been improper as premature; however, since neither party has argued this issue, the Court need not and does not decide it.

However, even if the Chase Claim had been properly filed under Rule 3004, Rule 3006 provides the only express mechanism for withdrawal of such a claim, and states in pertinent part:

> A creditor may withdraw a claim as of right by filing a notice of withdrawal, except as provided in this rule. If after a creditor has filed a proof of claim an objection is filed thereto or a complaint is filed against that creditor in an adversary proceeding, or the creditor has accepted or rejected the plan or has otherwise participated significantly in the case, the creditor may not withdraw the claim except on order of the court after a hearing on notice . . . .

FED. R. BANKR. P. 3006. Rule 3006 does not specifically reference debtor- or trustee-filed claims; while the first part of this rule ("A creditor may withdraw a claim as of right by filing a notice of withdrawal, except as provided in this rule.") appears to govern any claim of a creditor, whether filed by the creditor or on its behalf, the rule is specific that the creditor must have court approval to withdraw the claim once an objection or complaint has been filed. Thus, while Rules 3004 and 3006 would appear to permit Chase to withdraw the claim filed by Debtors on its behalf without court approval before an objection or adversary proceeding is filed, the plain language of Bankruptcy Rules 3004 and 3006 does not explicitly permit Debtors to withdraw the Chase Claim, particularly in light of the fact that a complaint was filed by Debtors against Chase in the Adversary relating to the Chase Claim.

A number of courts have held that neither the Bankruptcy Code nor the Bankruptcy Rules authorize a debtor to withdraw a claim filed on behalf of a creditor. *See*, *e.g.*, *In re Johnson*, 2008 WL 5120114, at *5 (Bankr. N.D. Ala. Dec. 3, 2008) ("[O]nly a creditor, not a debtor, may withdraw a claim."); *In re Melton*, 194 B.R. 418, 419 (Bankr. E.D. Tex. 1996)

("Although Rule 3004 allows a Debtor to file a claim on behalf of a creditor, there is no corresponding provision in Rule 3006 which would allow the Debtor to withdraw that claim once it has been filed."); *In re Hutchins*, 162 B.R. 1014, 1021 (Bankr. N.D. Ill. 1994) ("While a creditor is allowed to withdraw a claim it has filed, no provision of the bankruptcy code allows a debtor to withdraw a claim filed by that debtor on behalf of a creditor."); *see also* 8 COLLIER ON BANKRUPTCY ¶ 501.04 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("Once a claim is filed by a debtor, the debtor does not have the authority to subsequently withdraw the claim.")

Although not directly on point, this Court finds the court's analysis in *Hutchins* to be instructive. In *Hutchins*, the Chapter 20 debtor filed an unsecured claim on behalf of a junior mortgagee after her plan had been confirmed. 162 B.R. at 1015. The debtor's stated motivation in filing this claim was to bring the lien claim under her Chapter 13 plan and prevent foreclosure on her home. *Id.* at 1015, 1021. After debtor filed the claim, debtor defaulted on the first mortgage, which ultimately led to debtor's abandonment of her interest in her home. *Id.* at 1022. Thereafter, debtor sought to withdraw the very claim she filed on behalf of the junior mortgagee. *Id.* at 1016-17, 1021. The debtor argued that she had the right to withdraw the claim since the mortgagee had both failed to file a timely proof of claim and had failed to object to the claim filed on the mortgagee's behalf. *Id.* at 1021. The court denied the debtor's request to withdraw the claim, and held that neither the Bankruptcy Code nor the Bankruptcy Rules authorize a debtor to withdraw a claim filed on behalf of a creditor. *Id.* Moreover, the court emphasized that "[t]he mere fact that [a] claim no longer is viewed as benefiting [the] [d]ebtor is not a ground for withdrawing it." *Id.*

Here, Debtors present a markedly similar argument to the position rejected in *Hutchins*. That is, Debtors essentially allege that since the Chase Claim was properly filed and since Chase

failed to object the Chase Claim, withdrawal is permissible despite the lack of express statutory or rule authority supporting this proposition. As in *Hutchins*, Debtors have also failed to point to any provision in the Bankruptcy Code, the Bankruptcy Rules, or case law that either explicitly or implicitly permits a debtor's withdrawal of a claim filed by a debtor pursuant to Rule 3004.

As problematic, if not more so, is that Debtors clearly filed the Chase Claim so that they could initiate the Adversary for the express purpose of avoiding the Chase Mortgage and reclassifying the Chase Claim as unsecured.[8] Now that the Judgment has been entered declaring the Chase Mortgage to be wholly unsecured, Debtors are seeking to withdraw the very claim that formed the basis for such a declaration; said otherwise, the Chase Claim no longer benefits Debtors, so Debtors are seeking to withdraw the very claim they filed on behalf of Chase.

Based upon the foregoing, even if the Chase Claim was properly filed under Rule 3004, this Court finds no cognizable basis for Debtors to withdraw the Chase Claim.

*Law of the Case*

Equally as problematic with Debtors' request to withdraw the Chase Claim is that the Judgment did not disallow the Chase Claim, but declared the Chase Claim to be wholly unsecured, with such claim to be void upon the filing by the Chapter 13 Trustee of a Certification of Completed Chapter 13 Plan. Debtors' effort to now treat the Chase Mortgage as wholly voided through the Plan and as a disallowed claim, with no distribution to Chase of any kind, is not permissible under the law of the case doctrine.

"Under the law of the case doctrine, a decision on an issue of law made at one stage becomes binding precedent to be followed in subsequent stages of the same litigation." *In re Kuncman*, 454 B.R. 276, 282 (Bankr. E.D.N.Y. 2011), quoting *In re PCH Assocs.*, 949 F.2d 585,

---

[8] This Court need not and therefore does not reach the issue of whether a claim has to be filed by or on behalf of a purported secured creditor for a debtor to initiate an adversary proceeding to determine the extent, validity, priority and/or lien status of a lien filed of public record.

592 (2d Cir. 1991). Even though application of the law of the case doctrine is not binding, "[it] counsels a court against revisiting its prior rulings in subsequent stages of the same case absent 'cogent' and 'compelling' reasons such as an 'intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *In re Elmasri*, 2010 WL 1544420, at *4 (Bankr. E.D.N.Y. Apr. 19, 2010), quoting *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008).

In the Judgment, this Court unequivocally determined that the Chase Claim was to be "deemed a wholly unsecured claim, and that the entire subordinate mortgage lien shall be declared null and void upon the filing by the Chapter 13 Trustee of a Certification of Completed Chapter 13 Plan." [adv. pro. dkt item 8] Debtors have not set forth any cogent or compelling reason to, essentially, convert the Judgment from one reclassifying the mortgage claim as unsecured to one disallowing the claim entirely. Consequently, this Court's determination that the Chase Claim is wholly unsecured constitutes the law of the case.

Therefore, Debtors' Plan must treat the Chase Claim as an unsecured claim in the amount for which the claim was filed, or the Court will not confirm the Plan. *See Miller*, 462 B.R. at 434.

*Debtors' Good Faith*

The Trustee has also objected to confirmation of the Plan on the basis that it has not been proposed in good faith as required under § 1325(a)(3). There is no argument before this Court that these Chapter 20 Debtors may not strip off the Chase Mortgage and treat it as a wholly unsecured claim through the Plan; rather, the Trustee is arguing that Debtors conduct in filing the Chase Claim, filing and prevailing in the Adversary, and then attempting to withdraw the claim they filed, constitutes an unfair manipulation of the Bankruptcy Code, warranting a determination that the Plan was not proposed in good faith. This Court agrees.

This Court has previously held that "the strip off of [a] wholly unsecured mortgage debt is permissible under a chapter 13 plan for a debtor who is ineligible to obtain a discharge, and will be effective when payments required pursuant to § 1322(b)(1) and otherwise under the plan are completed." *In re Miller, 462 B.R.* at 434. This Court also determined that the stripped off claim would be classified and treated as unsecured for purposes of plan confirmation. *Id.* Since Debtors have chosen not to treat the Chase Mortgage as wholly unsecured with the lien being avoided upon Plan completion, this Court must determine whether the Plan was proposed in good faith. *See*, *e.g.*, *In re Blendheim*, 2011 WL 6779709, at *5 (Bankr. W.D. Wash. Dec. 27, 2011) ("Although [there is no] inherent barrier to lien stripping in a Chapter 20 case, it is essential that any plan proposing such lien stripping otherwise comply with the traditional requirements for Chapter 13 confirmation."); *see generally In re Ochs*, 283 B.R. 135, 137 (Bankr. E.D.N.Y. 2002).

Section 1325(a)(3) states: "Except as provided in subsection (b), the court shall confirm a plan if – the plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). While good faith is not defined by statute or legislative history, it certainly does, however, require "honesty of intention." *Ochs*, 283 B.R. 137, quoting *In re Johnson*, 708 F.2d 865, 868 (2d Cir. 1983). As such, it is incumbent upon courts to examine the totality of the circumstances on a case-by-case basis and "inquire whether the debtor has misrepresented facts in his plan, unfairly manipulated the Bankruptcy Code, or otherwise proposed the plan in an inequitable manner." *In re Plagakis*, 2004 WL 203090 at *4 (E.D.N.Y. 2004); *In re Klevorn*, 181 B.R. 8, 10 (Bankr. N.D.N.Y. 1995).

The Trustee and Debtors have cited to a variety of tests that courts in this district and elsewhere have applied when evaluating plan good faith under a totality of the circumstances

10

analysis.[9] Regardless of which test this Court chooses to enlist, the Court may make a broad inquiry into whether the Plan and circumstances of this case demonstrate an abuse of the purpose or spirit of Chapter 13.[10] *See In re Ochs*, 283 B.R. at 138; *In re Setzer*, 47 B.R. 340, 345 (Bankr. E.D.N.Y. 1985). Further, "[t]echnical compliance with the Code is in and of itself insufficient to establish good faith." *In re Kelvorn*, 181 B.R. at 12. Rather, "[t]here must also be some assurance that the debtor who has invoked the reorganization provisions of the Code [has done] so with the purpose of accomplishing the aims and objections of bankruptcy philosophy and policy." *Id*.

In this case, Debtors filed the Petition approximately one year and five months after receiving their Chapter 7 discharge. Congress has determined pursuant to 11 U.S.C. § 1328(f) that Debtors are prevented from receiving a Chapter 13 discharge and would be so ineligible within four years of receiving a discharge under Chapter 7. However, as noted in *Miller*, eligibility to receive a discharge is not a barrier to filing a Chapter 13 case nor to confirming a Chapter 13 plan; a litany of unanticipated events can occur within four years which may necessitate debtors acting in good faith to seek the protections Chapter 13 provides, despite

---

[9] Debtors ask the Court to look to the court's analysis in *In re Klevorn*, which suggests consideration of the following factors: "(1) whether the debtor has few or no unsecured creditors; (2) whether there has been a previous petition filed by the debtor or a related entity; (3) whether the debtor's conduct pre-petition was proper; (4) whether the petition permits the debtor to evade court orders; (5) whether the petition was filed on the eve of foreclosure; (6) whether the foreclosed property is the sole or major asset of the debtor; (7) whether the debtor's income is sufficient such that there is a likely possibility of reorganization; (8) whether the reorganization essentially involves the resolution of a two party dispute, and (9) whether the debtor filed solely to obtain the protection of the automatic stay." *In re Klevorn*, 181 B.R. at 11. The Trustee, on the other hand, cites to the court's decision in *In re Blendheim*, which lists the following four factors to consider in Chapter 20 lien stripping cases: "(1) whether debtors have a need for bankruptcy other than to do a lien strip, (2) whether the debtors acted equitably in proposing a plan, (3) whether the debtors are insolvent and are devoting all of their income to the plan, and (4) whether the debtors used serial filings to avoid payment to creditors." *In re Blendheim*, 2011 WL 6779709, at *7.

[10] Chapter 13's purpose has been described as follows, "[it] is designed to facilitate adjustments of all types of debts of individuals with regular income through extension and composition plans funded out of future income, under the protection of the court." *In re Kitchens*, 702 F.2d 885, 887 (11th Cir. 1983); *see also* 8 COLLIER ON BANKRUPTCY ¶ 1300.02 ("Creditor interests are promoted through ratable recoveries from future income not available to creditors in liquidating bankruptcy proceedings. Chapter 13 maximizes debtor relief by preserving to the debtor existing assets, as well as employment or going-concern value, pending completion of a repayment plan under the supervision of the chapter 13 trustee.")

11

ineligibility for discharge. *Miller*, 462 B.R. 421. In fact, these Debtors had a genuine need to seek the protections of the Bankruptcy Code, notwithstanding their substantial disposable income; Debtors appeared to need to cure arrearages on their first mortgage, repay priority debts owed to the Internal Revenue Service, and develop a plan to repay general unsecured debts.

Nevertheless, while Debtors appear to have sought bankruptcy protection in good faith, the circumstances concerning the Chase Claim and the Plan demonstrate an attempt to abuse the purpose and provisions of Chapter 13 and to effectuate an unfair manipulation of the bankruptcy process. As discussed above, Debtors filed the Chase Claim and the Adversary on June 21, 2011, purportedly because Debtors wished to reclassify the claim as unsecured and pay the Chase Mortgage through the Plan. Debtors prevailed in the Adversary and obtained a Judgment which explicitly called for treatment of the Chase Claim as unsecured and for voiding of the Chase Mortgage upon plan completion. Thereafter, Debtors executed maneuvers designed to propose a plan which called for no distribution of any kind to Chase. That conduct is antithetical to the exercise of good faith required of a debtor proposing a Chapter 13 plan.[11]

In light of the foregoing, this Court finds that the Plan should not be confirmed as it has not been proposed in good faith under 11 U.S.C. § 1325(a)(3).

*Confirmation of the Plan under 11 U.S.C. § 1325(b)(1)(B)*

The Trustee has also objected to confirmation of the Plan due to Debtors' alleged failure to contribute all of their disposable income to the Plan. However, it is important to highlight that the Trustee has not argued that Debtors have taken improper deductions or otherwise omitted sources of income in calculating their disposable income. *See*, *e.g.*, *In re Mendelson*, 412 B.R. 75, 76 (Bankr. E.D.N.Y. 2009); *In re Rahman*, 400 B.R. 362, 362 (Bankr. E.D.N.Y. 2009).

---

[11] Nothing in this decision should be construed as condoning Chase's failure to take any action to protect its rights and interests.

Instead, Trustee contends that Debtors have not devoted the entirety of their disposable income to the Plan.

Pursuant to § 1325(b)(1), when the Chapter 13 trustee or the holder of an allowed unsecured claim objects to confirmation, the Court:

> [M]ay not approve the plan unless, as of the effective date of the plan . . . the plan provides that all of debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1)(B). While the statute does not define "projected disposable income," § 1325(b)(2) states, "the term 'disposable income' means current monthly income received by the debtor . . . less amounts reasonably necessary to be expended . . . for the maintenance or support of the debtor. . . ." 11 U.S.C. § 1325(b)(2). Moreover, § 101(10A) defines "current monthly income" as "the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income. . . ." 11 U.S.C. § 101(10A); *see Hamilton v. Lanning*, 560 U.S.---, 130 S.Ct. 2464 (2010); *In re Almonte*, 397 B.R. 659, 667 (Bankr. E.D.N.Y. 2008)(Grossman, J.).

Regardless of how this Court chooses to calculate "projected disposable income,"[12] it is undisputed that Debtors' Schedules I and J show disposable income of $3,767.37 and their Official Form B22C reveals disposable income of $4,992.67. Thus, despite a substantial monthly surplus, Debtors seek to pay Chase nothing under the Plan. It is clear that Debtors have the ability to pay all general unsecured claims in full through the Plan. Moreover, as discussed *supra*, the Judgment stripped off the Chase Mortgage and rendered it wholly unsecured. Based on this Court's decision in *Miller*, the Chase Claim will be treated as an allowed unsecured

---

[12] Debtors have not disputed either Trustee's contention that Debtors have not contributed all their disposable income to the Plan, or Trustee's determination of what constitutes Debtors' disposable income. Significantly, Debtors have not directly challenged their ability to pay the Chase Claim in full.

13

claim, and the strip off of the Chase Mortgage will be treated as effective when payments under the Plan are completed. *See Miller*, 462 B.R. at 434. Therefore, because the Trustee objected to confirmation of the Plan pursuant to § 1325(b), and the Plan does not provide for all of Debtors' "projected disposable income" to be applied to all unsecured creditors' claims for the duration of the applicable commitment period, the Plan is not confirmable by virtue of § 1325(b)(1)(B).

Consequently, this Court finds that the Plan also should not be confirmed pursuant to 11 U.S.C. § 1325(b)(1)(B).

*Disallowance of the Chase Claim*

Debtors contend that if the Court determines that withdrawal of the Chase Claim is impermissible, the Court should nevertheless disallow the Chase Claim as an unsecured claim. As a basis for this argument, Debtors allege that since the Court has already disallowed the Chase Claim as a secured claim and since Debtors are no longer personally liable to Chase due to their Chapter 7 discharge, disallowance of the Chase Claim is warranted. This Court disagrees.[13]

As a preliminary matter, the Court did not disallow the Chase Claim pursuant to § 502; rather, as evidenced by the Judgment, and as stated above, this Court determined that the Chase Mortgage was to be treated as wholly unsecured pursuant to § 506(a) and would be stripped off when payments required under § 1322(b)(1) and otherwise under the Plan are completed. *See Miller*, 462 B.R. at 421.

Debtors cite to the Supreme Court's decision in *Johnson v. Home State Bank*, 501 U.S. 78 (1991), for the proposition that the now-unsecured Chase Claim should be disallowed on the grounds that Debtor has no *in personam* liability for the Chase Mortgage. However, the Supreme Court's decision in *Johnson* does not mandate this result. In *Johnson,* the Supreme

---

[13] The Court notes that Debtors have not cited to any provision of the Bankruptcy Code or Rules that authorize a debtor to object to allowance of a claim that debtor filed on behalf of a creditor.

14

Court held that a Chapter 20 debtor could treat a mortgage lien, for which debtor's personal liability had been discharged under Chapter 7, as a "claim" within § 101(5) for the purposes of inclusion in the debtor's Chapter 13 plan. *Id.* at 83-84. The Court only considered § 502 in light of its broader analysis of what constitutes a "claim" under § 101(5), *id.* at 85, but did not, however, set forth the specific treatment required for such a "claim." *Miller*, 462 B.R. at 431, citing *Johnson*, 501 U.S. at 81.

Nevertheless, Debtors' argument must fail. This Court determined that the Chase Claim, which was an *in rem* claim when this case was filed, is to be treated as wholly unsecured under § 506(a) and stripped off upon completion of plan payments. *See In re Akram*, 259 B.R. 371, 378-79 (Bankr. C.D. Cal. 2001) (the amount of a secured claim remains unaffected by a Chapter 7 discharge, and after a debtor strips off the lien in a subsequent Chapter 13 case, the full amount owed to that creditor is deemed a general unsecured claim for Chapter 13 plan purposes). Debtors' argument that, by discharging their personal liability in their prior Chapter 7 case and by stripping off Chase's lien in the Adversary, they have somehow disallowed and reduced the Chase Claim from $100,516.80 to $0, is unsupported by any relevant legal authority and is simply unpersuasive.

Based upon the foregoing, the Court will not disallow the Chase Claim pursuant to § 502.

## CONCLUSION

Debtors have exceeded the outer limits of the Bankruptcy Code and Rules. Debtors filed the Chase Claim prior to the Bar Date, filed and prevailed in the Adversary, and then attempted to withdraw the very claim they filed despite the absence of authority in the Bankruptcy Code or Rules to do so. Debtors also proposed the Plan, which called for no distribution of any kind to Chase, in spite of this Court's prior Judgment which specifically called for treatment of the

15

Chase Claim as unsecured through the Plan.  In addition, Debtors, by their own calculations, have monthly disposable income in excess of $3,700.00, which is sufficient to pay all creditors in full through the Plan; yet, Debtors propose to pay Chase nothing.  Moreover, Debtors have argued that the Chase Claim should be disallowed without citing to any supporting legal authority.  This case exemplifies an unfair manipulation of the Bankruptcy Code.

The Plan has not been proposed in good faith under 11 U.S.C. § 1325(a)(3).  The Plan violates § 1325(b)(1)(B).  Debtors should not and will not be allowed to withdraw or disallow the Chase Claim.

For the reasons stated herein, it is hereby

**ORDERED**, that Debtor's purported withdrawal of proof of claim number 4 [dkt item 19] is denied; and it is further

**ORDERED**, that confirmation of the Debtors' Third Amended Chapter 13 Plan [dkt item 20] is denied; and it is further

**ORDERED**, that Debtors shall have **thirty (30) days** from entry of this Decision and Order to file a plan consistent with this Court's ruling.



**Dated: August 1, 2012**  
**Central Islip, New York**

_____  
**Alan S. Trust**  
**United States Bankruptcy Judge**